IN THE UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PENDLETON DIVISION

ALLEN LEE WILEY,

    Plaintiff,

v.

STATE OF OREGON; and MS. MaLISSA McCALLHAN, Nurse (TRCI) Two Rivers Correctional Institution

    Defendants.

Case No. 2:17-cv-00664-JO

OPINION AND ORDER

JONES, District Judge:

Plaintiff Allen Lee Wiley (Wiley), acting *pro se*, brought this prisoner civil rights action pursuant to 42 U.S.C. § 1983 [#2]. His claim arises from the medical care he received while incarcerated at the Two Rivers Correctional Institution (TRCI) in Umatilla, Oregon. He alleges that the State of Oregon and Nurse McCallhan[1] violated his Eighth Amendment right when they acted with deliberate indifference to his medical needs. Wiley seeks unspecified monetary damages to compensate for the physical and emotional harm caused by defendants.

Defendants filed a motion for summary judgment [#23]. Wiley filed a response consisting of a letter in which he states: "I have given the Courts all the eye witness

---

[1] In his complaint, Wiley refers to this defendant as McCallhan and McCallahan. The signed declaration attached to defendants' motion for summary judgment names this defendant as Callahan. Neither party claims any misidentification. For purposes of this opinion, I refer to her as Callahan.

1 Opinion and Order

information I could remember...I have no more to offer in this case other than a Court Hearing of me Testifiying [sic] as to the events of 2016." [# 39] For the following reasons, defendants' motion is GRANTED.

## Legal Standard

1. Summary Judgment

Summary judgment is proper where pleadings, discovery, and affidavits show there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). The district court should grant summary judgment if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). If the moving party shows that there are no genuine issues of material fact, the burden shifts to the non-moving party to "go beyond the pleadings and by [his] own affidavits or by the 'depositions, answers to interrogatories and admissions on file,' designate specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986) (quoting Fed. R. Civ. P. 56) A scintilla of evidence, or evidence that is merely colorable or not significantly probative, does not present a genuine issue of material fact. *United Steelworkers of America v. Phelps Dodge*, 865 F.2d 1539, 1542 (9th Cir. 1989). Reasonable doubts as to the existence of a material factual issue are resolved against the moving party and inferences drawn from facts are viewed in the light most favorable to the non-moving party. *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630-31 (9th Cir. 1987). A *pro se* plaintiff is to be held

to a less stringent standard than a plaintiff acting with assistance of counsel. *Erickson v. Pardus*, 551 U.S. 89, 95 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

2. Eighth Amendment Claim

The treatment a prisoner receives in prison is subject to scrutiny under the Eighth Amendment. *Helling v. McKinney*, 509 U.S. 25, 31 (1993). The Eighth Amendment imposes duties on prison officials to provide prisoners with basic necessities, including medical care. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). A prison official violates the Eighth Amendment when two requirements are met: (1) the deprivation alleged is objectively, sufficiently serious, *Farmer*, 511 U.S. at 834, and (2) the prison official possessed a sufficiently culpable state of mind. *Id.* The official must know of and disregard an excessive risk to an inmate's health. *Farmer*, 511 U.S. at 837.

## Discussion

1. Background

On January 31, 2016, Wiley was incarcerated in the Two Rivers Correctional Institution (TRCI) in the Disciplinary Segregation Unit (DSU). That evening, according to Wiley's complaint, Callahan issued him the wrong blister pack of medication. At the time she dispensed the medicine, Callahan neither confirmed the blister pack was Wiley's nor had him sign a form acknowledging receipt of the medicine. Wiley claims he was sick all night with seizures and vomiting and was unable to eat breakfast the following morning, February 1, 2016, because he felt too weak.

Later that morning, Wiley states he told DSU Sergeant Espinoza that Wiley suspected he had received the wrong medication. Although he was dizzy and groggy,

Wiley noted that he was feeling better. He asked Espinoza to relate the incident to Callahan, have her check up on him, and ask her to make a report for his file. Wiley never saw Callahan and never received any medical attention.

In support of their motion for summary judgment, defendants provided two declarations: one from Callahan [#24] and the other from the Christopher Digiulio, M.D., the Deputy Medical Director of the Oregon Department of Corrections [#25]. Callahan declares that she was employed as a registered nurse at TRCI from June 2, 2011 to March 25, 2016 but was on administrative leave and away from the facility from October 1, 2015 through March 25, 2016, a time span that includes the date Wiley alleges he received the wrong medicine.

Diguilio reviewed Wiley's medical chart and the DSU housing log. As medical director, he is familiar with the practices and procedures of both the medical staff when they dispense medications, the DSU security staff when they perform tier checks and observe the inmates throughout the day and night, and the interaction between the two groups. He declares that Wiley received daily attention from the Health Services nursing staff who came to his cell each day to give him his prescribed medications. "Wiley did not tell Health Services staff that he had the wrong medication or that he had a seizure and vomiting all night January 31, 2016 thorough the morning of February 1, 2016." [#25, ¶ 6]. He also states:

> DSU security staff perform tier checks and observe each inmate throughout the night at least twice an hour. If Mr. Wiley was up all night having seizures and vomiting, DSU staff would have observed this behavior. Staff would contact Health Services staff who are at the facility twenty-four (24) hours per day, seven days per week. DSU staff did not report that Mr. Wiley was having health issues.

[#25, ¶ 7]. Diguilio includes the relevant housing log which makes no mention of any medical interaction.[2] [#25, Att. 3]. Finally, he reports that in the time after February 1, 2016, Wiley has not been treated for any serious medical issues and his April 2016 lab tests were normal.

2. Defendant Callahan

In his pleading, Wiley alleges that Callahan provided another inmate's medicine on January 31, 2016. In her sworn declaration, Callahan refutes Wiley's allegation, stating that she was on administrative leave during the dates Wiley alleges he received the wrong medication. Callahan's declaration eliminates any issue of material fact as to her and shifts the burden to Wiley to "go beyond the pleadings and by [his] own affidavits or by the 'depositions, answers to interrogatories and admissions on file,' designate specific facts showing that there is a genuine issue for trial." *Celotex Corp.* 477 U.S. at 322-24. In his response, Wiley provides no evidence to counter Callahan's declaration or raise a genuine issue of material fact. He could have filed his own affidavit stating that Callahan was present, or affidavits of other witnesses who could attest that she was on duty on January 31, 2016. He could have provided employment records showing she was working that night. Wiley did none of those and thus failed to designate specific facts showing there is a genuine issue for trial as to Callahan.

3. Deliberate Indifference

Even if Wiley provided evidence putting in question Callahan's presence on January 31, 2016, his claim would fail. To succeed on an Eighth Amendment claim for inadequate medical treatment, a plaintiff must demonstrate that defendants showed

---

[2] The housing log indicates that Wiley refused breakfast on January 29, 2016, three days before the actions alleged in his complaint.

"deliberate indifference to [his] serious medical needs." *Estelle v. Gamble*, 429 U.S. 104 (1976). The Ninth Circuit employs a two-part test for deliberate indifference. "First, the plaintiff must show a serious medical need by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain. Second, the plaintiff must show the defendant[s'] response to the need was deliberately indifferent." *Wilhelm v. Rotman*, 680 F.3d 1113, 1122 (9th Cir. 2012), *quoting Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006).

As to the first part, the Ninth Circuit identifies three situations in which a medical need is serious: (1) "[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment"; (2) "the presence of a medical condition that significantly affects an individual's daily activities"; or (3) "the existence of chronic and substantial pain." *McGuckin v. Smith*, 974 F.2d 1050, 1059–60 (9th Cir. 1992), *overruled in part on other grounds by WMX Techs., Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997)(en banc).

With their motion for summary judgment, defendants submitted evidence that Wiley did not seek treatment for any condition arising out of his alleged medical mistake. In addition, lab results taken less than three months after the alleged incident were normal. Wiley did not respond to the evidence submitted by defendants with any affidavits, depositions, or interrogatories to show he had a serious medical need. Wiley provided no evidence as to the existence of an injury or medical condition that went untreated, or any chronic or substantial pain. Defendants have met their burden to show there are no genuine issues of material fact as to the seriousness of Wiley's medical condition. *Clement v. Gomez*, 298 F.3d 898, 904 (9th Cir. 2002). While I am

aware that a *pro se* plaintiff is to be held to a less stringent standard than a plaintiff acting with assistance of counsel, Wiley has not gone beyond his pleadings to show the existence of a serious medical need.

4. Defendant State of Oregon

Pursuant to the Eleventh Amendment, federal courts may not entertain a lawsuit brought by a citizen against a state, its agencies, or departments without the state's consent. *Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 54 (1996). There are two exceptions to Eleventh Amendment immunity: (1) Congress abrogates the Eleventh Amendment without the consent of the states in certain instances; or (2) a state waives its immunity by consenting to suit in federal court. *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 238 (1985). A state waives its sovereign immunity by expressly consenting to be sued in a particular action. *Edelman v. Jordan*, 415 U.S. 651, 663 (1974). Here, Wiley does not claim either of the exceptions and I find no express waiver on the part of the State.

## Conclusion

After the government filed Callahan's declaration stating she was not physically present at TRCI on January 31, 2016, Wiley needed to provide facts that would place that issue in dispute. He did not. Even if he had, Wiley failed to show that he suffered from a serious medical need, and thus could not prevail on a claim for deliberate indifference. Finally, pursuant to the Eleventh Amendment, the State of Oregon is immune from suit. For the foregoing reasons, I GRANT defendants' Motion for

Summary Judgment [#23]. Wiley's claims against Callahan and the State of Oregon are dismissed with prejudice.

Dated this 9th of September, 2019.

Robert E. Jones,
Senior District Court Judge